**U.S. Bankruptcy Court**

**Eastern District of Pennsylvania**

Notice of Electronic Claims Filing

The following transaction was received from NICHOLAS, BRIAN on 4/18/2023 at 2:56 PM EST

[File another claim](#)

| | |
|---|---|
| **Case Name:** | Lisa Tranausky |
| **Case Number:** | [23-10647-mdc](#) |
| **Creditor Name:** | MIDFIRST BANK<br>999 NorthWest Grand Boulevard<br>Oklahoma City, OK 73118 |
| **Claim Number:** | [7](#)   [Claims Register](#) |
| **Amount Claimed:** | $133,132.35 |
| **Amount Secured:** | $133132.35 |
| **Amount Priority:** | |

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**POC- Tranausky.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=4/18/2023] [FileNumber=31252721-
0] [102ec39e0e797eecd2d9425801f198f49542b8fe13267bcdb88976264c2c339b3c
3b6fc1e50b72072bb6ce8208fa89e1ab5005fb581beb068a4fcdedcad30cab]]
**Document description:**Exhibit 410a Payment History
**Original filename:**C:\fakepath\410a- Tranausky.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=4/18/2023] [FileNumber=31252721-
1] [3f08fe2f1688bea9dde667dc954b6571391ec04c1e5158ba6a4fd744547e16c23e
bb532bd7c9959353253b4bb968d1d7aa843e49a91c1ad7db57983434e128e8]]
**Document description:**Exhibit Escrow Analysis
**Original filename:**C:\fakepath\EA-Tranausky.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=4/18/2023] [FileNumber=31252721-
2] [1b1b9d1c3d492b15fda2bc3671c3bcc8363256a82e1149fb1dcb1d594b00cb2a6b
71088bc899ca93a6abadc11a33dfe7dab17d894e1fb2330191bbca7659f0b5]]
**Document description:**Exhibit Loan Documents
**Original filename:**C:\fakepath\Loan Documents- Tranausky.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=4/18/2023] [FileNumber=31252721-

3] [30c6a236c7c307d47696b28208502daf3c031b73e3991d4db0535901035448f21b
3cdcdce413e738087bd8bb406d29a2e4001b5a54f9efd82ca3aeb99dd66f13]]

**23-10647-mdc Notice will be electronically mailed to:**

MICHAEL PATRICK FARRINGTON on behalf of Creditor MIDFIRST BANK
mfarrington@kmllawgroup.com

United States Trustee
USTPRegion03.PH.ECF@usdoj.gov

KENNETH E. WEST
ecfemails@ph13trustee.com, philaecf@gmail.com

PAUL H. YOUNG on behalf of Debtor Lisa Tranausky
support@ymalaw.com,
ykaecf@gmail.com,paullawyers@gmail.com,pyoung@ymalaw.com;youngpr83562@notify.bestcase.com,tkennedy@ymalaw.com,lesliebrown.paralegal@gmail.com

**23-10647-mdc Notice will not be electronically mailed to:**

Synchrony Bank
c/o PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA 23541

**Fill in this information to identify the case:**

Debtor 1    Lisa Tranausky
(Spouse, if filing)

United States Bankruptcy Court for the EASTERN District of Pennsylvania

Case number   23-10647 MDC

Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must **leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

| 1. Who is the current creditor? | **MIDFIRST BANK** |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor _____ |

| 2. Has this claim been acquired from someone else? | ☐ No |
| | ☒ Yes.  From whom?    loanDepot.com LLC |

| 3. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
| | **MidFirst Bank**<br>Name | Name |
| | **999 NorthWest Grand Boulevard**<br>Number        Street | Number        Street |
| | **Oklahoma City, OK 73118**<br>City        State        Zip Code | City        State        Zip Code |
| | **1-800-654-4566**<br>Contact phone | Contact phone |
| | Contact Email | Contact Email |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br><br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | |

| 4. Does this claim amend one already filed? | ☒ No |
| | ☐ Yes.  Claim number on court claims registry (if known)_____    Filed on _____<br>MM / DD / YYYY |

| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☒ No |
| | ☐ Yes.  Who made the earlier filing?  _____ |

<table>
<tr><td><strong>Part 2:</strong></td><td><strong>Give Information About the Claim as of the Date the Case Was Filed</strong></td></tr>
</table>

**6. Do you have any number you use to identify the debtor?**

☐ No
☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor    7708

---

**7. How much is this claim?** $133,132.35

Does this amount include interest or other charges?

☐ No
☒ Yes Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001 (c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

**Money Loaned**

---

**9. Is all or part of the claim secured?**

☐ No
☒ Yes. The claim is secured by a lien on property.
Nature of property: <u>3736 Devonshire Place Bensalem, PA 19020</u>

☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

Basis for perfection:    **Deed of Trust, Mortgage, Note**
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:    $_____

Amount of the claim that is secured:    **$133,132.35**

Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: **$3,904.46**

Annual Interest Rate (when case was filed)    3.8750%

☒ Fixed
☐ Variable

---

**10. Is this claim based on a lease?**

☒ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

---

**11. Is this claim subject to a right of setoff?**

☒ No
☐ Yes. Identify the property: _____

242

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☒ No

☐ Yes. *Check all that apply:*

|  | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B) | |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(   ) that applies. | $ _____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  __04/18/2023__
                              MM / DD / YYYY

__/s/   Brian C. Nicholas, Attorney ID#  317240__
              Signature

**Print the name of the person who is completing and signing this claim:**

| Name | __Brian C. Nicholas__ | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | __Bankruptcy Attorney__ | | |
| Company | __KML Law Group, P.C.__ | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | __701 Market Street, Suite 5000__ | | |
| | Number   Street | | |
| | __Philadelphia__ | __PA__ | __19106__ |
| | City | State | ZIP Code |
| Contact phone | __(201) 549-5366__ | Email | __bnicholas@kmllawgroup.com__ |

243

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Lisa Tranausky | CHAPTER 13 |
| Debtor(s) | NO. 23-10647 MDC |

CERTIFICATE OF SERVICE

I, the undersigned, attorney for MIDFIRST BANK do hereby certify that true and correct copies of
the foregoing Proof of Claim have been served <u>April 18, 2023</u>, by electronic filing upon those listed below:

<u>Attorney for Debtor(s)</u>
PAUL H. YOUNG
2149 Galloway Roads
Centre Plaza Shopping Center
Bensalem, PA 19020

***Bankruptcy Trustee***
Kenneth E. West
Office of the Chapter 13 Standing Trustee (VIA ECF)
1234 Market Street - Suite 1813
Philadelphia, PA 19107

Date: <u>April 18, 2023</u>

**/s/ Brian C. Nicholas**
Brian C. Nicholas
Attorney I.D. 317240
KML Law Group, P.C.
BNY Mellon Independence Center
701 Market Street, Suite 5000
Philadelphia, PA 19106
(201) 549-5366
bnicholas@kmllawgroup.com

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case Number | 23-10647-13 | Principal Balance: | 134,098.78 | Principal & Interest Due: | 1,914.57 | Principal & Interest: | 638.19 |
| Debtor 1 | LISA TRANAUSKY | Interest Due: | 1,352.46 | Prepetition Fees Due: | 196.12 | Monthly Escrow: | 478.75 |
| Debtor 2 | | Fees, Costs Due: | 196.12 | Escrow Deficiency for Funds | | Private Mortgage Insurance: | 108.58 |
| Last 4 Digits to Identify | xxxx7708 | | | Advanced: | 0.00 | | |
| Creditor | MidFirst Bank | Escrow Deficiency for Funds Advanced: | 0.00 | Projected Escrow Shortage: | 1,793.77 | Total Monthly Payment: | 1,225.52 |
| Servicer | MidFirst Bank | Less Total Funds On Hand: | 2,515.01 | Less Funds On Hand: | 0.00 | | |
| Fixed Accrual/Daily | | Deferred Balance: | 0.00 | | | Next Due Date: | 4/1/2023 |
| Simple Interest/Other | Fixed | Total Debt: | 133,132.35 | Total Prepetition Arrearage: | 3,904.46 | | |

**Part 5: Loan Payment History from First Date of Default**

| | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual Payment Amount | C. Funds Received | D. Amount Incurred | E. Description | F. Contractual Due Date | G. Prin, Int & Esc Past Due Balance | H. Amount to Principal | I. Amount to Interest | J. Amount to Escrow | K. Amount to Fees or Charges | L. Unapplied Funds | M. Principal Balance | N. Accrued Interest Balance | O. Escrow Balance | P. Fees/ Charges Balance | Q. Unapplied Funds Balance |
| 6/1/2022 | 1225.87 | | | Contractual Payment Due | 6/1/2022 | 1225.87 | | | | | | 135516.53 | | 2506.63 | 0.00 | 0.00 |
| 6/6/2022 | | 1225.87 | | Funds Received | | 1225.87 | | | | | | 135516.53 | | 2506.63 | 0.00 | 0.00 |
| 6/6/2022 | | | | Payments Posting | *6/01/2022 | 0.00 | 200.58 | 437.61 | 587.68 | | | 135315.95 | | 3094.31 | 0.00 | 0.00 |
| 6/6/2022 | | | | MIP Paid | | 0.00 | | | -111.75 | | | 135315.95 | | 2982.56 | 0.00 | 0.00 |
| 7/1/2022 | 1225.87 | | | Contractual Payment Due | 7/1/2022 | 1225.87 | | | | | | 135315.95 | | 2982.56 | 0.00 | 0.00 |
| 7/5/2022 | | | | MIP Paid | | 1225.87 | | | -108.58 | | | 135315.95 | | 2873.98 | 0.00 | 0.00 |
| 7/29/2022 | | 1274.90 | | Funds Received | | 1225.87 | | | | | | 135315.95 | | 2873.98 | 0.00 | 0.00 |
| 7/29/2022 | | | 49.03 | Payments Posting | *7/01/2022 | 0.00 | 201.23 | 436.96 | 587.68 | | | 135114.72 | | 3461.66 | 0.00 | 0.00 |
| 7/29/2022 | | | | Taxes Paid | | 0.00 | | | -3,016.41 | | | 135114.72 | | 445.25 | 0.00 | 0.00 |
| 8/1/2022 | 1225.87 | | | Contractual Payment Due | 8/1/2022 | 1225.87 | | | | | | 135114.72 | | 445.25 | 0.00 | 0.00 |
| 8/4/2022 | | | | MIP Paid | | 1225.87 | | | -108.58 | | | 135114.72 | | 336.67 | 0.00 | 0.00 |
| 9/1/2022 | 1225.87 | | | Contractual Payment Due | 9/1/2022 | 2451.74 | | | | | | 135114.72 | | 336.67 | 0.00 | 0.00 |
| 9/2/2022 | | | | MIP Paid | | 2451.74 | | | -108.58 | | | 135114.72 | | 228.09 | 0.00 | 0.00 |
| 9/12/2022 | | 2500.77 | | Funds Received | | 2451.74 | | | | | | 135114.72 | | 228.09 | 0.00 | 0.00 |
| 9/12/2022 | | | | Payments Posting | *8/01/2022 | 1225.87 | 201.88 | 436.31 | 587.68 | | | 134912.84 | | 815.77 | 0.00 | 0.00 |
| 9/12/2022 | | | 49.03 | Late Fees | 8/1/2022 | 1225.87 | | | | 49.03 | | 134912.84 | | 815.77 | 49.03 | 0.00 |
| 9/12/2022 | | | -49.03 | Payments Posting | *9/01/2022 | 0.00 | 202.53 | 435.66 | 587.68 | | | 134710.31 | | 1403.45 | 49.03 | 0.00 |
| 9/12/2022 | | | -49.03 | Late Fees | 9/1/2022 | 0.00 | | | | -49.03 | | 134710.31 | | 1403.45 | 0.00 | 0.00 |
| 10/1/2022 | 1225.87 | | | Contractual Payment Due | 10/1/2022 | 1225.87 | | | | | | 134710.31 | | 1403.45 | 0.00 | 0.00 |
| 10/4/2022 | | | | MIP Paid | | 1225.87 | | | -108.58 | | | 134710.31 | | 1294.87 | 0.00 | 0.00 |
| 10/10/2022 | | 1225.87 | | Funds Received | | 1225.87 | | | | | | 134710.31 | | 1294.87 | 0.00 | 0.00 |
| 10/10/2022 | | | | Payments Posting | *10/01/2022 | 0.00 | 203.19 | 435.00 | 587.68 | | | 134507.12 | | 1882.55 | 0.00 | 0.00 |
| 11/1/2022 | 1225.87 | | | Contractual Payment Due | 11/1/2022 | 1225.87 | | | | | | 134507.12 | | 1882.55 | 0.00 | 0.00 |
| 11/4/2022 | | | | MIP Paid | | 1225.87 | | | -108.58 | | | 134507.12 | | 1773.97 | 0.00 | 0.00 |
| 11/21/2022 | | 1225.87 | | Funds Received | | 1225.87 | | | | | | 134507.12 | | 1773.97 | 0.00 | 0.00 |
| 11/21/2022 | | | | Payments Posting | *11/01/2022 | 0.00 | 203.84 | 434.35 | 587.68 | | | 134303.28 | | 2361.65 | 0.00 | 0.00 |
| 11/21/2022 | | | 49.03 | Late Fees | 11/1/2022 | 0.00 | | | | 49.03 | | 134303.28 | | 2361.65 | 49.03 | 0.00 |
| 12/1/2022 | 1225.87 | | | Contractual Payment Due | 12/1/2022 | 1225.87 | | | | | | 134303.28 | | 2361.65 | 49.03 | 0.00 |
| 12/2/2022 | | | | MIP Paid | | 1225.87 | | | -108.58 | | | 134303.28 | | 2253.07 | 49.03 | 0.00 |
| 1/1/2023 | 1225.87 | | | Contractual Payment Due | 1/1/2023 | 2451.74 | | | | | | 134303.28 | | 2253.07 | 49.03 | 0.00 |
| 1/4/2023 | | | | MIP Paid | | 2451.74 | | | -108.58 | | | 134303.28 | | 2144.49 | 49.03 | 0.00 |
| 1/16/2023 | | | 49.03 | Late Fee for Uncollected Pmt | 1/1/2023 | 2451.74 | | | | 49.03 | | 134303.28 | | 2144.49 | 98.06 | 0.00 |
| 2/1/2023 | 1225.87 | | | Contractual Payment Due | 2/1/2023 | 3677.61 | | | | | | 134303.28 | | 2144.49 | 98.06 | 0.00 |
| 2/3/2023 | | | | MIP Paid | | 3677.61 | | | -108.58 | | | 134303.28 | | 2035.91 | 98.06 | 0.00 |
| 2/10/2023 | | 1225.87 | | Funds Received | | 3677.61 | | | | | | 134303.28 | | 2035.91 | 98.06 | 0.00 |
| 2/10/2023 | | | | Payments Posting | *12/01/2022 | 2451.74 | 204.50 | 433.69 | 587.68 | | | 134098.78 | | 2623.59 | 98.06 | 0.00 |
| 2/10/2023 | | | 49.03 | Late Fees | 12/1/2022 | 2451.74 | | | | 49.03 | | 134098.78 | | 2623.59 | 147.09 | 0.00 |
| 2/16/2023 | | | 49.03 | Late Fee for Uncollected Pmt | 2/1/2023 | 2451.74 | | | | 49.03 | | 134098.78 | | 2623.59 | 196.12 | 0.00 |
| 3/1/2023 | 1225.87 | | | Contractual Payment Due | 3/1/2023 | 3677.61 | | | | | | 134098.78 | | 2623.59 | 196.12 | 0.00 |
| 3/6/2023 | | | | MIP Paid | | 3677.61 | | | -108.58 | | | 134098.78 | | 2515.01 | 196.12 | 0.00 |

# ▞▞▞ Midland Mortgage

### A Division of MidFirst Bank

LISA M TRANAUSKY
3736 DEVONSHIRE PLACE
BENSALEM          PA 19020-0000

YOUR LOAN NUMBER: ███████
BANKRUPTCY CASE # 23-10647-13

DATE: 03/06/23

### *** ESCROW ACCOUNT DISCLOSURE STATEMENT - PROJECTIONS ***

PLEASE REVIEW THIS STATEMENT CLOSELY - YOUR MORTGAGE PAYMENT MAY BE AFFECTED.
THIS STATEMENT TELLS YOU OF ANY CHANGES IN YOUR MORTGAGE PAYMENT, ANY SURPLUS
REFUNDS, OR ANY SHORTAGE YOU MUST PAY. IT ALSO SHOWS YOU THE ANTICIPATED
ESCROW ACTIVITY FOR YOUR ESCROW CYCLE  BEGINNING      04/23 THROUGH      03/24.

------- ANTICIPATED PAYMENTS FROM ESCROW -    04/23 THROUGH   03/24 -------

| | |
|---|---:|
| HAZARD | 1828.00 |
| MIP PREM TO HUD | 1302.96 |
| CITY/TOWN TAX | 900.62 |
| SCHOOL DISTRICT | 3016.41 |
| TOTAL PAYMENTS FROM ESCROW | 7047.99 |
| MONTHLY PAYMENT TO ESCROW | 587.33 (1/12TH OF ABOVE TOTAL) |

------- ANTICIPATED ESCROW ACTIVITY -    04/23 THROUGH    03/24--------

|  | -ANTICIPATED PAYMENTS- | | | -- ESCROW BALANCE COMPARISON -- | | |
|---|---|---|---|---|---|---|
| MONTH | TO ESCROW | FROM ESCROW | DESCRIPTION | ANTICIPATED | | REQUIRED |
|  |  |  | ACTUAL STARTING BALANCE | 0.00 | | 4308.78 |
| APR 23 | 587.33 | 108.58 | MIP PREM TO HUD | | | |
|  |  | 900.62 | CITY/TOWN TAX | -421.87 | | 3886.91 |
| MAY 23 | 587.33 | 1828.00 | HAZARD | | | |
|  |  | 108.58 | MIP PREM TO HUD | -1771.12 | | 2537.66 |
| JUN 23 | 587.33 | 108.58 | MIP PREM TO HUD | -1292.37 | | 3016.41 |
| JUL 23 | 587.33 | 108.58 | MIP PREM TO HUD | -813.62 | | 3495.16 |
| AUG 23 | 587.33 | 108.58 | MIP PREM TO HUD | | | |
|  |  | 3016.41 | SCHOOL DISTR ALP | -3351.28 | RLP | 957.50 |
| SEP 23 | 587.33 | 108.58 | MIP PREM TO HUD | -2872.53 | | 1436.25 |
| OCT 23 | 587.33 | 108.58 | MIP PREM TO HUD | -2393.78 | | 1915.00 |
| NOV 23 | 587.33 | 108.58 | MIP PREM TO HUD | -1915.03 | | 2393.75 |
| DEC 23 | 587.33 | 108.58 | MIP PREM TO HUD | -1436.28 | | 2872.50 |
| JAN 24 | 587.33 | 108.58 | MIP PREM TO HUD | -957.53 | | 3351.25 |
| FEB 24 | 587.33 | 108.58 | MIP PREM TO HUD | -478.78 | | 3830.00 |
| MAR 24 | 587.33 | 108.58 | MIP PREM TO HUD | -.03 | | 4308.75 |

------------ DETERMINING THE SUFFICIENCY OF YOUR ESCROW BALANCE ------------

IF THE ANTICIPATED LOW POINT BALANCE (ALP) IS LESS THAN THE REQUIRED BALANCE
(RLP), THEN YOU HAVE AN ESCROW SHORTAGE. YOUR ESCROW SHORTAGE IS    -4308.78.

IF THE ANTICIPATED LOW POINT BALANCE (ALP) IS GREATER THAN THE REQUIRED
BALANCE (RLP), THEN YOU HAVE AN ESCROW SURPLUS. YOUR SURPLUS IS        0.00.

**Midland Mortgage Customer Service**
P.O. Box 26648 · Oklahoma City, OK 73126-0648 · Tel 1-800-654-4566 · Fax 1-405-767-5500 · www.MyMidlandMortgage.com
**Qualified Written Requests, Notices of Error, Information Requests, and Credit Disputes must be sent to:**
P.O. Box 268959 · Oklahoma City, OK 73126-8959

# ▲▲▲ Midland Mortgage

*A Division of MidFirst Bank*

| | |
|---|---:|
| *ADJUSTED ESCROW SHORTAGE IS | 0.00. |

```
------------------ CALCULATION OF YOUR NEW PAYMENT AMOUNT ------------------
          PRINCIPAL & INTEREST                                638.19
          ESCROW (1/12TH OF ANNUAL ANTICIPATED                587.33
             DISBURSEMENTS AS COMPUTED ABOVE)
          PLUS: OPTIONAL INSURANCE PREMIUMS                     0.00
          PLUS: REPLACEMENT RESERVE OR FHA SVC CHG              0.00
          PLUS: SHORTAGE PAYMENT                                0.00
          MINUS: SURPLUS CREDIT                                 0.00
          ROUNDING ADJUSTMENT                                   0.00
          MINUS: BUYDOWN/ASSISTANCE PAYMENTS                    0.00
```

BORROWER PAYMENT STARTING WITH THE PAYMENT DUE 04/01/23    1225.52
NOTE: YOUR ESCROW BALANCE MAY CONTAIN A CUSHION. A CUSHION IS AN AMOUNT OF
MONEY HELD IN YOUR ESCROW ACCOUNT TO PREVENT YOUR ESCROW BALANCE FROM BEING
OVERDRAWN WHEN INCREASES IN THE DISBURSEMENTS OCCUR. FEDERAL LAW AUTHORIZES
A MAXIMUM ESCROW CUSHION NOT TO EXCEED 1/6TH OF THE TOTAL ANNUAL ANTICIPATED
ESCROW DISBURSEMENTS MADE DURING THE ABOVE CYCLE. THIS AMOUNT IS      957.50.
YOUR LOAN DOCUMENTS OR STATE LAW MAY REQUIRE A LESSER CUSHION. WHEN YOUR
ESCROW BALANCE REACHES ITS LOWEST POINT DURING THE ABOVE CYCLE, THAT BALANCE
IS TARGETED TO BE YOUR CUSHION AMOUNT.

YOUR ESCROW CUSHION FOR THIS CYCLE IS      957.50.

YOUR ANTICIPATED ESCROW BALANCE CONSISTS OF THE FOLLOWING DETAIL (AN * NEXT
TO AN AMOUNT INDICATES THIS IS A TOTAL THAT REPRESENTS MORE THAN ONE PAYMENT
TO OR DISBURSEMENT FROM ESCROW):
ESCROW PAYMENTS UP TO ESCROW ANALYSIS EFFECTIVE DATE:
```
01/23      587.68      02/23      587.68      03/23      587.68
```
ESCROW DISBURSEMENTS UP TO ESCROW ANALYSIS EFFECTIVE DATE:
```
00/00      0.00                    00/00      0.00
00/00      0.00                    00/00      0.00
00/00      0.00                    00/00      0.00
```

**Midland Mortgage Customer Service**
P.O. Box 26648 · Oklahoma City, OK 73126-0648 · Tel 1-800-654-4566 · Fax 1-405-767-5500 · www.MyMidlandMortgage.com
**Qualified Written Requests, Notices of Error, Information Requests, and Credit Disputes must be sent to:**
P.O. Box 268959 · Oklahoma City, OK 73126-8959

# ///// Midland Mortgage

*A Division of MidFirst Bank*

YOUR LOAN NUMBER: ▮▮▮▮▮▮▮

\*\*\* POC DISCLOSURE ESCROW ACCOUNT HISTORY \*\*\*

| DATE | TRANSACTION TYPE | AMOUNT | ESC BAL |
|------|------------------|--------|---------|
| 3/29/2022 | PROPERTY TAX PAYMENT | ($900.62) | $1,067.65 |
| 4/4/2022 | MORTGAGE INSURANCE PREMIUM | ($111.75) | $955.90 |
| 4/28/2022 | ESCROW DEPOSIT | $587.68 | $4,446.38 |
| 5/3/2022 | PROPERTY INSURANCE PAYMENT | ($1,828.00) | $2,618.38 |
| 5/4/2022 | MORTGAGE INSURANCE PREMIUM | ($111.75) | $2,506.63 |
| 6/6/2022 | ESCROW DEPOSIT | $587.68 | $3,094.31 |
| 6/6/2022 | MORTGAGE INSURANCE PREMIUM | ($111.75) | $2,982.56 |
| 7/5/2022 | MORTGAGE INSURANCE PREMIUM | ($108.58) | $2,873.98 |
| 7/29/2022 | PROPERTY TAX PAYMENT | ($3,016.41) | $445.25 |
| 7/29/2022 | ESCROW DEPOSIT | $587.68 | $3,461.66 |
| 8/4/2022 | MORTGAGE INSURANCE PREMIUM | ($108.58) | $336.67 |
| 9/2/2022 | MORTGAGE INSURANCE PREMIUM | ($108.58) | $228.09 |
| 9/12/2022 | ESCROW DEPOSIT | $587.68 | $815.77 |
| 9/12/2022 | ESCROW DEPOSIT | $587.68 | $1,403.45 |
| 10/4/2022 | MORTGAGE INSURANCE PREMIUM | ($108.58) | $1,294.87 |
| 10/10/2022 | ESCROW DEPOSIT | $587.68 | $1,882.55 |

**Midland Mortgage Customer Service**
P.O. Box 26648 · Oklahoma City, OK  73126-0648 · Tel 1-800-654-4566 · Fax 1-405-767-5500 · www.MyMidlandMortgage.com
Qualified Written Requests, Notices of Error, Information Requests, and Credit Disputes must be sent to:
P.O. Box 268959 · Oklahoma City, OK  73126-8959

# /W/ Midland Mortgage

*A Division of MidFirst Bank*

YOUR LOAN NUMBER:

\*\*\* POC DISCLOSURE ESCROW ACCOUNT HISTORY \*\*\*

| | | | |
|---|---|---|---|
| 11/4/2022 | MORTGAGE INSURANCE PREMIUM | ($108.58) | $1,773.97 |
| 11/21/2022 | ESCROW DEPOSIT | $587.68 | $2,361.65 |
| 12/2/2022 | MORTGAGE INSURANCE PREMIUM | ($108.58) | $2,253.07 |
| 1/4/2023 | MORTGAGE INSURANCE PREMIUM | ($108.58) | $2,144.49 |
| 2/3/2023 | MORTGAGE INSURANCE PREMIUM | ($108.58) | $2,035.91 |
| 2/10/2023 | ESCROW DEPOSIT | $587.68 | $2,623.59 |
| 3/6/2023 | MORTGAGE INSURANCE PREMIUM | ($108.58) | $2,515.01 |

**Midland Mortgage Customer Service**
P.O. Box 26648 · Oklahoma City, OK 73126-0648 · Tel 1-800-654-4566 · Fax 1-405-767-5500 · www.MyMidlandMortgage.com
**Qualified Written Requests, Notices of Error, Information Requests, and Credit Disputes must be sent to:**
P.O. Box 268959 · Oklahoma City, OK 73126-8959

# NOTE

FHA Case No.



| **MAY 21, 2015** | **BENSALEM,** | **PENNSYLVANIA** |
|---|---|---|
| [Date] | [City] | [State] |

**3736 DEVONSHIRE PLACE, BENSALEM, PA 19020**
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **186,459.00** (this amount is called "Principal"), plus interest to the order of the Lender. The Lender is **LOANDEPOT.COM, LLC DBA MORTGAGE MASTER**. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **3.375%**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1ST** day of each month beginning on **JULY 1, 2015**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on **JUNE 1, 2045**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. BOX 986, NEWARK, NJ 07184-0986** or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $**824.33**.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is



due, I will pay a late charge to the Note Holder. The amount of the charge will be **4.000%** of my overdue payment, unless such amount exceeds the maximum amount allowed by applicable state law, in which case the Lender may collect the maximum amount allowed by such law. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 13 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

*Lisa M. Tranausky*

- BORROWER - LISA M TRANAUSKY

*[Sign Original Only]*

MORTGAGE LOAN ORIGINATOR LINDA SCHUHAM WOLFENSON
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY
MORTGAGE LOAN ORIGINATION COMPANY LOANDEPOT.COM,
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY

PAY TO THE ORDER OF

**MIDFIRST BANK**

WITHOUT RECOURSE
LOANDEPOT.COM, LLC D/B/A
MORTGAGE MASTER

Thomas Hutchinson
VP, Operations

Without Recourse Pay to the Order of:

From: MidFirst Bank

By: *Desiree Rodgers*

Desiree Rodgers, Vice President

```
CERTIFIED PROPERTY IDENTIFICATION NUMBERS
                                    BENSALEM TWP
        CERTIFIED 05/12/2022 BY TF
```

When Recorded Mail to:
FIRST AMERICAN TITLE CO.
FAMS-DTO RECORDING
3 FIRST AMERICAN WAY
SANTA ANA, CA 92707-991

Document Prepared by:
Sonja Rose
MidFirst Bank
999 N.W. Grand Boulevard, Suite 100
Oklahoma City, OK 73118-6116
1-800-552-3000

Parcel #

Tax ID#

Please cross-reference to:  Instrument Number: 2015031677, BUCKS  County Pennsylvania.

## LOAN MODIFICATION AGREEMENT
### FIXED RATE LOAN        ** On 3/17/2022

This Loan Modification Agreement ("Agreement"), made ** by and between    **LISA M
TRANAUSKY & JOSHUA TRANAUSKY** ("Borrower")  MidFirst Bank, a federally chartered
savings association located at 501 N.W. Grand Blvd. Oklahoma City, OK 73118 ("Lender"), and
Mortgage Electronic Registration Systems, Inc. ("MERS") ("Mortgagee")  renews, amends,
supplements and extends: (1) the Mortgage, Deed of Trust, or Security Deed ("Security
Instrument") originated on 5/21/2015, recorded on 6/3/2015, in Instrument Number:
2015031677, in BUCKS  County, Pennsylvania and granted or assigned to Mortgage Electronic
Registration Systems, Inc. ("MERS"), and (2) the Promissory Note ("Note") bearing the same
date, in the original principal amount of $186,459.00 and secured by, the Security Instrument
and other loan documents typically referred to as "addenda" or "riders" (collectively referred to
herein as "Loan Documents"), which are secured by the real and personal property described in

Borrower Initial Lines

*Please add the appropriate number of initial lines for each
signatory over 4

Page 1 of the Loan Modification Agreement
Order Number:
MERS MIN:

MERS Phone

the Security Instrument, located at 3736 DEVONSHIRE PLACE, BENSALEM, PA 19020-0000, the real property described being set forth as follows:

See Exhibit "A" attached hereto and made a part hereof.

Parcel # ▮▮▮▮▮▮

(Herein defined as "Property").

**Capitalized Amount: $0.00**
Being the same property conveyed to LISA M. TRANAUSKY AND JOSHUA TRANAUSKY by Deed recorded 6/3/2015 and recorded in Instrument Number: 2015031676 in BUCKS County Pennsylvania.

Borrower is in default or at imminent risk of default under the Loan Documents and desires (i) that the Lender forbear from exercising its rights under the Loan Documents, (ii) to extend or rearrange the time and manner of payment of the Note and other obligations due to Lender under the Loan Documents, and (iii) to extend and carry forward the lien(s) on the Property, whether created by the Security Instrument or otherwise. Lender, the legal holder entitled to enforce the Note and of the lien(s) securing the same, has agreed to Borrower's request to so forbear, to extend or rearrange the time and manner of payment of the Note, and to grant certain other financial accommodations pursuant to the terms of this Agreement.

In consideration of the mutual promises and agreements exchanged, and other good and valuable consideration paid by each of the parties to the other, the receipt and sufficiency of which is hereby acknowledged, the parties mutually agree to modify, renew and extend the Note and Security Instrument and any other Loan Documents, as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. **Acknowledgement of Unpaid Balance:**

   Borrower acknowledges that as of the date of the first payment due under this Agreement, Borrower owes Lender the unpaid balance of **$168,294.60 ("Unpaid Balance")**, in addition to the other fees, charges and expenses described in the section of the Agreement entitled "Acknowledgement of Unpaid Fees and Costs." The Unpaid Balance includes unpaid principal of $163,265.95, unpaid interest of $2,125.85, escrows advanced of $2,902.80, and certain unpaid fees of $0.00, less $0.00 in suspense funds.

   Borrower acknowledges that **$32,578.13** of the Unpaid Balance shall be paid by a new loan, extended to Borrower by Department of Housing and Urban Development ("HUD") according to the terms of HUD Partial Claim loan ("Partial Claim Loan") that is memorialized in a Partial Claim Promissory Note and Subordinate Mortgage/Deed of Trust between Borrower and HUD ("HUD Partial Claim Documents"). Borrower shall not be required to make monthly payments to HUD on the Partial Claim Loan but, rather, shall repay that amount to HUD according to the terms of the HUD Partial Claim Documents.

Borrower Initial Here

*Please add the appropriate number of initial lines for each signatory over 4

MERS Phone ▮▮▮▮▮▮

After removal of the Partial Claim Loan amount from the Unpaid Balance, the amount owed by Borrower to Lender under the terms of this Agreement is **$135,716.47** ("Modified Principal Balance"). Borrower hereby renews, extends and promises to pay the Modified Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Modified Principal Balance until the full amount of the Modified Principal Balance and the other amounts due hereunder and under the Loan Documents have been paid in accordance with the terms and conditions of the Loan Documents, as modified by this Agreement. All references in the Loan Documents to "Principal" shall be deemed to refer to the Modified Principal Balance.

2. **Acknowledgement of Unpaid Fees and Costs**:

   Borrower agrees to remain responsible for payment of allowable costs and fees now due and owing ("Unpaid Fees and Costs") plus other allowable late charges, costs, fees and expenses incurred after this Agreement becomes effective (the total sum of which is referred to as "Fees and Costs"). Borrower agrees and acknowledges that Borrower received notice of Unpaid Fees and Costs due as of a date certain prior to execution of this Agreement.

   Lender has agreed to postpone the collection of any outstanding Fees and Costs that are not paid in advance or that are not included in the Modified Principal Balance. Fees and Costs not included in the Modified Principal Balance remain due and owing as part of the debt secured by the Loan Documents to the extent provided in the Loan Documents and as otherwise permissible under applicable law. The outstanding Fees and Costs remain due and payable to Lender and shall be paid by Borrower, with interest, as permitted by the Loan Documents. Furthermore, outstanding Fees and Costs shall be payable to Lender on demand of Lender and shall be secured by the Security Instrument to the extent provided in the Security Instrument and otherwise permissible under applicable laws and requirements.

3. **Interest Calculation**:

   Interest will be calculated at a fixed yearly interest rate of **3.875%**.

4. **Payment Amounts, Time of Payments and Maturity Date**:

   a. Borrower acknowledges and agrees that Borrower shall, beginning on **5/1/2022**, through the Maturity Date, make monthly payments of U.S. **$638.19** for principal and interest and shall continue to make such payments in accordance with the terms and conditions set forth in the Loan Documents until the Modified Principal Balance is paid in full.

   b. An escrow account has been established under the terms and conditions of the Loan Documents. Borrower will make an escrow payment each month on each payment due date. The escrow payment currently is **$587.68** per month, which is subject to change depending on the amounts attributable to taxes, insurance and other escrow items. **The present combined monthly payment and escrow payment will be**

Page 3 of the Loan Modification Agreement
Order Number:
MERS MIN:

Borrower Initial Lines

*Please add the appropriate number of Initial lines for each signatory over 4
MERS Phone

**$1,225.87**. The escrow payment will be re-analyzed from time to time in accordance with the terms of the Loan Documents to determine the appropriate escrow payment amount so that taxes, insurance, and other escrow items may be paid appropriately. The escrow payment amount will be combined with the monthly principal and interest payment amount.

c. The Maturity Date of the Loan is extended to **4/1/2052**. If Borrower still owes amounts to Lender on the Maturity Date, Borrower will pay these amounts in full on the Maturity Date.

5. **Acknowledgment of Pre-Existing Conditions to Loan Modification:**
The Borrower acknowledges and agrees this Agreement is subject to the following conditions, which must exist at the time this Agreement is executed:

a. All payments set forth in the Payment Schedule under the Loan Modification Trial Plan Agreement must have been made according to the Payment Schedule;
b. The Property has no physical conditions that will adversely affect the Borrower's continued use of the Property or interfere with the Borrower's ability to make payments as required under this Agreement; and
c. The Borrower (one or more) is occupying the Property as the Borrower's primary residence, unless occupancy by a Borrower is expressly not required by applicable Investor or Insurer guidance and program requirements; and
d. The Lender remains in the first lien position and there are no outstanding liens and/or judgments against the Property; and
e. If applicable, Bankruptcy Court approval; and
f. If applicable, all requirements for an assumption of the loan are satisfied and Lender has approved the assumption.

The Borrower acknowledges and agrees that in the event the conditions set forth in this paragraph are not satisfied, this Agreement shall become null and void unless otherwise expressly agreed by Lender in writing. In the event this Agreement becomes null and void as set forth in this paragraph, Borrower acknowledges and agrees all provisions of the Loan Documents shall continue in full force and effect and Lender shall be under no obligation to modify any provision of the Loan Documents under this Agreement.

6. **Place of Payment:**

Borrower agrees to make payments at the following address or such other place as the Lender may require upon written notice to Borrower:

Midland Mortgage - A Division of MidFirst Bank
Attn: Cashiers
P.O. Box 268888
Oklahoma City, OK  73126-8888

Borrower Initial lines

*Please add the appropriate number of initial lines for each signatory over 4

7. **Adjustable Rate Loan Provisions in Note:**

If the interest rate in the Interest Calculation section of this Agreement is calculated as provided in the Note, any rate and payment adjustment provisions in the Note will apply. If the interest rate in the Interest Calculation section of this Agreement is fixed, any rate and payment adjustment provisions in the Note will not apply.

8. **Sale or Transfer of Property by Borrower:**

   a. If all or any part of the Property or any interest in it is sold or transferred (or, if Borrower is not a natural person, any beneficial interest in Borrower is sold or transferred) without the Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.

   b. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of the designated period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

9. **Compliance with Loan Documents:**

Borrower represents that, except for the payments described in this Agreement, Borrower is in full compliance with the covenants in the Loan Documents and that all of the representations and warranties contained in the Loan Documents are true, correct or satisfied as of the effective date of this Agreement.

10. **Renewal and Extension:**

It is the intention of the parties that all liens and security interests described in the Loan Documents are hereby renewed and extended until the Modified Principal Balance and other obligations to Lender, have been fully paid. Borrower and Lender acknowledge and agree that the extension, amendment, modification or rearrangement effected by this Agreement shall in no manner affect or impair the Note or the liens and security interests securing the Note. The parties mutually agree that the purposes of this Agreement is to extend, modify, amend or rearrange the time and manner of payment of the Loan Documents and the indebtedness evidenced thereby, and to carry forward all liens and security interests (including, if applicable, any and all vendor's liens), which are expressly acknowledged by Borrower to be valid and subsisting, and in full force and effect to fully secure the payment of the Note.

Borrower Initial Lines

### 11. No Waiver of Lender's Rights Regarding Default:

All the rights, remedies, stipulations, and conditions contained in the Loan Documents relating to default in the making of payments under the Loan Documents also shall apply to default in the making of the modified payments hereunder. Nothing contained herein shall be deemed to be a waiver by Lender of any terms or conditions of the Loan Documents as modified by this Agreement. This Agreement shall in no way be deemed to be a waiver of Lender's rights and remedies by reason of any default by Borrower under the Loan Documents as herein modified, including without limitation future payment defaults. Nothing in this Agreement shall constitute an agreement by Lender to any future modification of the Loan Documents and Lender expressly reserves the right to refuse to agree to any future modifications.

### 12. Bankruptcy:

If, since inception of this loan through date of this Agreement, Borrower has received a discharge in a Chapter 7 bankruptcy and there has been no valid reaffirmation of the underlying debt, the Lender is not attempting to re-establish any personal liability for the underlying debt by entering into this Agreement. The parties acknowledge that Lender retains certain rights, including but not limited to, the right to foreclose its interest in the property under appropriate circumstances. The parties agree that the consideration for this Agreement is the Lender's forbearance from presently exercising its right and pursuing its remedies under the Security Instrument as a result of Borrower's default. The parties agree that if approval of this Agreement by the Bankruptcy Court is required and not received, this Agreement shall be null and void and of no further force or effect.

### 13. Loan Documents Remain In Full Force and Effect:

The provisions of the Loan Documents, as amended by this Agreement, shall continue in full force and effect, and Borrower acknowledges and reaffirms Borrower's liability to Lender under the Loan Documents, subject to the terms of the Bankruptcy section of this Agreement. In the event of any inconsistency between this Agreement and the terms of the Loan Documents, this Agreement shall govern. Nothing in this Agreement shall be understood or construed to be a novation, satisfaction or release, in whole or in part, of the Loan Documents. Except as otherwise specifically provided in this Agreement, the Loan Documents remain unchanged, and Borrower and Lender are bound and must comply with all of the terms and provisions of the Loan Documents, except as amended by this Agreement.

Borrower understands and agrees that MERS is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. MERS is the Mortgagee of record under the Security Instrument and this Agreement. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026 tel. (888) 679-MERS. Borrower understands and agrees that MERS holds

Borrower Initial Lines

Page 6 of the Loan Modification Agreement
Order Number:
MERS MIN:

*Please add the appropriate number of initial lines for each
signatory over 4
MERS Phone

only legal title to the interests granted by Borrower under the Loan Documents and this Agreement and is acting solely as nominee for Lender and Lender's successors and assigns and as such MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

### 14. Execution of Additional Documentation:

Borrower agrees to make and execute other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement, which if approved and accepted by Lender, shall be incorporated into this Agreement and shall bind and inure to Borrower's heirs, executors, administrators, and assigns.

### 15. Miscellaneous:

a. Lender does not, by execution of this Agreement, waive any rights it may have against any person not a party to the Agreement.

b. If any court of competent jurisdiction shall declare any provision of this Agreement to be invalid, to any extent, the remainder of the Agreement shall not be affected thereby and shall continue in full force and effect to bind the parties.

c. This Agreement may be executed simultaneously in any number of counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same Agreement.

d. This Agreement shall be governed by the laws of the state where the Property is located.

### 16. Effective Date:

This Agreement is effective upon the execution of this Agreement by Lender and Borrower.

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS LOAN MODIFICATION AGREEMENT, TOGETHER WITH THE LOAN DOCUMENTS AND ANY EXHIBITS AND SCHEDULES THERETO, REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND CONTROL OVER ALL PRIOR NEGOTIATIONS, AGREEMENTS AND UNDERTAKINGS BETWEEN THE PARTIES WITH RESPECT TO SUCH MATTER. ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN AGREEMENT MAY BE LEGALLY ENFORCED. THIS LOAN MODIFICATION AGREEMENT MAY BE AMENDED OR CHANGED ONLY BY A WRITTEN INSTRUMENT EXECUTED BY THE PARTIES OR THEIR AUTHORIZED ASSIGNEES.**

Borrower Initial Lines

Page 7 of the Loan Modification Agreement
Order Number:
MERS MIN:

*Please add the appropriate number of initial lines for each signatory over 4

MERS Phone

**BORROWER**

LISA M TRANAUSKY

JOSHUA TRANAUSKY

**Acknowledgement**

STATE OF Pennsylvania                    )
                                         ) SS:
COUNTY OF **BUCKS**                       )

On the 28ᵀᴴ day of March, 2022 before me, the undersigned, a notary public in and for said state, personally appeared **LISA M TRANAUSKY & JOSHUA TRANAUSKY**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

In witness whereof, I hereunto set my hand and official seal.

Notary Public

KENNETH L. SCHAPIRE
Printed name of notary

County of Residence: BUCKS

Commission Number: 1145757

My Commission Expires: May 30, 2022

Commonwealth of Pennsylvania - Notary Seal
KENNETH L. SCHAPIRE, Notary Public
Bucks County
My Commission Expires May 30, 2022
Commission Number 1145757

Page 8 of the Loan Modification Agreement
Order Number:
MERS MIN:

MERS Phone

**LENDER**

**MidFirst Bank, a federally chartered savings association located at 501 N.W. Grand Blvd.
Oklahoma City, OK 73118**

_____
Vice President, MidFirst Bank

Michael Henry
_____
Printed Name

### Acknowledgement

STATE OF OKLAHOMA        )
                         ) SS:
COUNTY OF OKLAHOMA       )

On the __14__ day of ___Apr·l___, 20___, before me, the undersigned, a notary public in and for said state, personally appeared ___Michael Henry___, who acknowledged himself/herself/themselves to be a Vice President of MidFirst Bank, a federally chartered savings association located at 501 N.W. Grand Blvd. Oklahoma City, OK 73118, and who is personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity as Vice President of MidFirst Bank, a federally chartered savings association located at 501 N.W. Grand Blvd. Oklahoma City, OK 73118, and that by his/her/their signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

In witness whereof, I hereunto set my hand and official seal.

_____
Notary Public

**Marjan Zijoud**
Printed Name of Notary

MARJAN ZIJOUD
Notary Public
State of Oklahoma
Commission # 21003631  Exp: 03/16/25

County of Residence: _____Oklahoma

My Commission Expires: **MAR 1 6 2025**

Page 9 of the Loan Modification Agreement
Order Number:
MERS MIN:

MERS Phone

**NOMINEE FOR LENDER**
Mortgage Electronic Registration Systems, Inc.

Vice President
Mortgage Electronic Registration Systems, Inc.

Steven Johnson

Printed Name

STATE OF Oklahoma        )
                         ) §:
COUNTY OF Oklahoma       )

On the 14 day of _April_, 20 22 before me, the undersigned, a notary public in and for said state, personally appeared **Steven Johnson**, who acknowledged himself/herself/themselves to be a Vice President of Mortgage Electronic Registration Systems Inc. and who is personally known to me or who proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity as Vice President of Mortgage Electronic Registration Systems Inc. and that by his/her/their signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

In witness whereof, I hereunto set my hand and official seal.

Notary Public

Marjan Zijoud
Printed name of notary

**NOTARY SEAL**
**MARJAN ZIJOUD**
Notary Public
State of Oklahoma
Commission # 21003631  Exp: 03/16/25

County of Residence: _____Oklahoma_____

My Commission Expires: __ MAR 1 6 2025

Page 10 of the Loan Modification Agreement
Order Number: ▉▉▉▉
MERS MIN: ▉▉▉▉▉▉▉▉▉▉

MERS Phone ▉▉▉▉▉▉

## Exhibit "A"

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND
IMPROVEMENTS THEREON ERECTED, SITUATE IN THE BENSALEM TOWNSHIP, BUCKS
COUNTY, COMMONWEALTH OF PENNSYLVANIA BEING KNOWN AS LOT NO. 138 ON A
PLAN OF CRAFTON VILLAGE, SECTION 1 MADE BY WILLIAM S. ERWIN, REGISTERED
PROFESSIONAL ENGINEER, LANGHORNE, PENNSYLVANIA, DATED MARCH 25, 1954
AND FURTHER DESCRIBED AS FOLLOWS, TO WIT:

BEGINNING AT A POINT ON THE SOUTHWESTERLY SIDE OF DEVONSHIRE PLACE 50
FEET WIDE AT THE DISTANCE OF 199.89 FEET MEASURED IN A NORTHEASTWARDLY
AND EASTWARDLY AND SOUTHEASTWARDLY DIRECTION BY VARIOUS COURSES AND
DISTANCES ALONG THE SOUTHEASTERLY, SOUTHERLY AND SOUTHWESTERLY SIDE
OF DEVONSHIRE PLACE FROM THE INTERSECTION OF THE SOUTHEASTERLY SIDE OF
BERKLEY ROAD 50 FEET WIDE; THENCE EXTENDING ALONG THE SOUTHWESTERLY
SIDE OF DEVONSHIRE PLACE THE 2 FOLLOWING COURSES AND DISTANCES: (1) IN A
SOUTHEASTWARDLY DIRECTION ON THE ARC OF A CIRCLE ON A LINE CURVING TO
THE RIGHT HAVING A RADIUS OF 175 FEET THE ARC DISTANCE OF 100 FEET TO A
POINT OF TANGENT; (2) SOUTH 39 DEGREES 28 MINUTES 12 SECONDS EAST 4.32 FEET
TO A POINT; THENCE EXTENDING SOUTH 50 DEGREES 31 MINUTES 48 SECONDS
WEST 100 FEET TO A POINT; THENCE EXTENDING NORTH 39 DEGREES 28 MINUTES 12
SECONDS WEST 39.43 FEET TO A POINT; THENCE EXTENDING NORTH 11 DEGREES 1
MINUTE 24 SECONDS EAST 93.58 FEET TO A POINT ON THE SOUTHWESTERLY SIDE OF
DEVONSHIRE PLACE THE FIRST MENTIONED POINT AND PLACE OF BEGINNING.

BEING KNOWN AS LOT NO. 138 ON THE ABOVE MENTIONED PLAN.

**Parcel #**

**Tax ID#**





## CERTIFICATE OF RESIDENCE

**MORTGAGE MODIFICATION AGREEMENT**
**TITLE OF DOCUMENT**

**BETWEEN:**

**LISA M TRANAUSKY & JOSHUA TRANAUSKY**
*(ASSIGNOR/MORTGAGOR/GRANTOR)*

**AND**

**MIDFIRST BANK**
*(ASSIGNEE/MORTGAGEE/GRANTEE)*

*The precise address of the within ASSIGNOR/MORTGAGOR/GRANTOR is:*

**3736 DEVONSHIRE PLACE  BENSALEM, PA  19020-0000**

BORROWER

_____(SEAL)       3/28/22
LISA M TRANAUSKY                        DATE

_____(SEAL)       3/28/22
JOSHUA TRANAUSKY                        DATE

Loan ID: ███

## BUCKS COUNTY RECORDER OF DEEDS
### 55 East Court Street
### Doylestown, Pennsylvania 18901
### (215) 348-6209

.

Instrument Number - 2015031677
Recorded On 6/3/2015 At 2:37:22 PM                    * Total Pages - 12
* Instrument Type - MORTGAGE - CORPORATIONS
  Invoice Number -                   User - SMC
* Mortgagor - TRANAUSKY, JOSHUA
* Mortgagee - LOANDEPOT COM
* Customer - SIMPLIFILE LC E-RECORDING
* FEES
  RECORDING FEES              $106.00
  TOTAL PAID                  $106.00

Bucks County UPI Certification
On June 3, 2015 By TF

This is a certification page

# DO NOT DETACH

This page is now part
of this legal document.                .

RETURN DOCUMENT TO:
THE LAW OFFICES OF JOY M. KREUTZER
668 WOODBOURNE RD SUITE 108
LANGHORNE, PA 19047

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Bucks County, Pennsylvania.



Joseph J. Szafran, Jr.
Recorder of Deeds

* - Information denoted by an asterisk may change during
the verification process and may not be reflected on this page.

```
CERTIFIED PROPERTY IDENTIFICATION NUMBERS
████████████████████████  BENSALEM TWP
    CERTIFIED 06/03/2015 BY TF
```

After Recording Return To:
LOANDEPOT.COM, LLC DBA
MORTGAGE MASTER
102 ELM STREET
WALPOLE, MA 02081
ATTN: MORTGAGE MASTER
(508) 850-4100

Prepared By:
APRIL PEIRCE
LOANDEPOT.COM, LLC DBA
MORTGAGE MASTER
102 ELM STREET
WALPOLE, MA 02081
(508) 850-4100

Property Address:
3736 DEVONSHIRE PLACE
BENSALEM, PA 19020

PIN ████████████████

[Space Above This Line For Recording Data]

# MORTGAGE

FHA Case No.
████████████████████
TRANAUSKY
Loan #: ████████████
MIN: ████████████████
MERS Phone: ████████████

THIS MORTGAGE ("Security Instrument") is given on **MAY 21, 2015**. The mortgagor is **JOSHUA TRANAUSKY AND LISA M TRANAUSKY, HUSBAND AND WIFE** ("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026, and a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834. The MERS telephone number is (888) 679-MERS. **LOANDEPOT.COM, LLC DBA MORTGAGE MASTER** ("Lender") is organized and existing under the laws of **DELAWARE**, and has an address of **26642 TOWNE CENTRE DRIVE, FOOTHILL RANCH, CA 92610**. Borrower owes Lender the principal sum of **ONE HUNDRED EIGHTY -SIX THOUSAND FOUR HUNDRED FIFTY-NINE AND 00/100** Dollars (U.S. **$186,459.00**). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **JUNE 1, 2045**. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in **BUCKS** County, Pennsylvania:
"SEE EXHIBIT A"
which has the address of **3736 DEVONSHIRE PLACE, BENSALEM**, Pennsylvania **19020** ("Property Address"):

FHA Pennsylvania Mortgage - 12/13
⟲ 400.38                    Page 1 of 10

TOGETHER WITH the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant agree as follows:

**UNIFORM COVENANTS:**

1. **Payment of Principal, Interest and Late Charge**
   Borrower shall promptly pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance and Other Charges**
   Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for

   (a) taxes and special assessments levied or to be levied against the Property,

   (b) leasehold payments or ground rents on the Property, and

   (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either

   (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or

   (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Sec. 2601 et seq. and implementing regulations, 12 C.F.R. Part 1024, as they may be amended from time to time (RESPA), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments

are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall deal with the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrowers account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3.  **Application of Payments**
    All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

    - First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

    - Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

    - Third, to interest due under the Note;

    - Fourth, to amortization of the principal of the Note; and

    - Fifth, to late charges due under the Note.

4.  **Fire, Flood, and Other Hazard Insurance**
    Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

    In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either

    (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or

    (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

    In the event of foreclosure of this Security Instrument or other transfer of title to the Property that

FHA Pennsylvania Mortgage - 12/13

extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds**

Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned property. Borrower shall also be in default if borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation**

The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the Indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property**

Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear Interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower:

(a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender;

(b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lenders opinion operate to prevent the enforcement of the lien; or

(c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees**

Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt**

(a) **Default**. Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval**. Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver**. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary**. In many circumstances regulations issued by the Secretary will limit Lender rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured**. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within **60 days** from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **60 days** from the date hereof, declining to insure this Security Instrument and the Note, shall be

deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement**

Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if:

(i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding,

(ii) reinstatement will preclude foreclosure on different grounds in the future, or

(iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance by Lender Not a Waiver**

Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrowers successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers**

The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrowers covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note:

(a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument;

(b) is not personally obligated to pay the sums secured by this Security Instrument; and

(c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices**

Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

FHA Pennsylvania Mortgage - 12/13

400.38                          Page 6 of 10

14. **Governing Law; Severability**

This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end, the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy**

Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances**

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any Investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Paragraph 16, "Environmental law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents**

Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving

notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure**
**If Lender requires immediate payment in full under Paragraph 9, Lender may initiate foreclosure by judicial proceedings and/or invoke any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence to the extent permitted by applicable law.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

19. **Release**
Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Waiver**
Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy of sale, and homestead exemption.

21. **Reinstatement Period**
Borrower's time to reinstate provided in Paragraph 10 shall extend to one hour prior to the commencement of bidding at a Sheriff's sale or other sale pursuant to this Security Instrument.

22. **Purchase Money Mortgage**
If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

23. **Interest Rate After Judgment**
Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

24. **Riders to this Security Instrument**
If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider ☐ Growing Equity Rider ☐ Adjustable Rate Rider
☐ Planned Unit Development Rider ☐ Graduated Payment Rider
☐ Other [specify]

FHA Pennsylvania Mortgage - 12/13
⬅ 400.38                    Page 8 of 10

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Lisa M Tranausky_ 05/1/15
- BORROWER - LISA M TRANAUSKY - DATE -

_Joshua Tranausky_ 5/21/15
JOSHUA TRANAUSKY - DATE -

**[Space Below This Line For Acknowledgment]**

STATE OF ___Pennsylvania___

COUNTY OF ___Bucks___

On this the __21__ day of __May 2015__, before me, the undersigned officer, personally appeared ___LISA M. TRANAUSKY and JOSHUA TRANAUSKY___

known to me (or satisfactorily proven) to be the person(s) whose name(s) are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_____
Notary Public

My Commission Expires: _____

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Joy M. Kreutzer, Notary Public
Falls Twp., Bucks County
My Commission Expires Aug. 26, 2018
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

MORTGAGE LOAN ORIGINATOR LINDA SCHUHAM WOLFENSON
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER

MORTGAGE LOAN ORIGINATION COMPANY LOANDEPOT.COM, LLC DBA MORTGAGE MASTER
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER

FHA Pennsylvania Mortgage - 12/13
400.38                         Page 9 of 10

## CERTIFICATE OF RESIDENCE

I, _____ do hereby certify that the correct address of the within-named lender is 1901 E Voorhees Street, Suite C, Danville, IL 61834 or P.O. Box 2026, Flint, MI 48501-2026, witness my hand this **21ST** day of **MAY, 2015**.

Agent of Lender

## LEGAL DESCRIPTION
## EXHIBIT "A"

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, situate in the Bensalem Township, Bucks County, Commonwealth of Pennsylvania being known as Lot No. 138 on a Plan of Crafton Village, Section 1 made by William S. Erwin, Registered Professional Engineer, Langhorne, Pennsylvania, dated March 25, 1954 and further described as follows, to wit:

BEGINNING at a point on the Southwesterly side of Devonshire Place 50 feet wide at the distance of 199.89 feet measured in a Northeastwardly and Eastwardly and Southeastwardly direction by various courses and distances along the Southeasterly, Southerly and Southwesterly side of Devonshire Place from the intersection of the Southeasterly side of Berkley Road 50 feet wide; thence extending along the Southwesterly side of Devonshire Place the 2 following courses and distances: (1) in a Southeastwardly direction on the arc of a circle on a line curving to the right having a radius of 175 feet the arc distance of 100 feet to a point of tangent; (2) South 39 degrees 28  minutes 12 seconds East 4.32 feet to a point; thence extending South 50 degrees 31 minutes 48 seconds West 100 feet to a point; thence extending North 39 degrees 28 minutes 12 seconds West 39.43 feet to a point; thence extending North 11 degrees 1 minute 24 seconds East 93.58 feet to a point on the Southwesterly side of Devonshire Place the first mentioned point and place of beginning.

BEING known as Lot No. 138 on the above mentioned plan.

Tax ID / Parcel No. ██████████

Being the same premises which Administrator of Veterans Affairs, an Office of the United States of America by Deed dated 09/13/1989 and recorded 11/17/1989 in Bucks County in Land Record Book 116 Page 1513 conveyed unto Edward F. White and Kathleen M. White, in fee.

## *BUCKS COUNTY RECORDER OF DEEDS*
**55 East Court Street**
**Doylestown, Pennsylvania 18901**
**(215) 348-6209**

.

Instrument Number - 2021018509
Recorded On 2/26/2021 At 8:26:51 AM                    * Total Pages - 13
* Instrument Type - MORTGAGE MODIFICATION
  Invoice Number                    User - KGB
* Mortgagor - TRANAUSKY, LISA M
* Mortgagee - MIDFIRST BANK
* Customer - SIMPLIFILE LC E-RECORDING
* FEES
  RECORDING FEES                 $64.50
  TOTAL PAID                     $64.50

> Bucks County UPI Certification
> On February 25, 2021 By TF

> This is a certification page
>
> # DO NOT DETACH
>
> This page is now part
> of this legal document.              .

RETURN DOCUMENT TO:
FIRST AMERICAN TITLE INSURANCE COMPANY
3 FIRST AMERICAN WAY
SANTA ANA, CA 92707-5913

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Bucks County, Pennsylvania.



Robin M. Robinson

Robin M. Robinson
Recorder of Deeds

* - Information denoted by an asterisk may change during
the verification process and may not be reflected on this page.

## BUCKS COUNTY RECORDER OF DEEDS

**55 East Court Street**
**Doylestown, Pennsylvania   18901**
**(215) 348-6209**

* Total Pages - 3

* Instrument Type - MORTGAGE ASSIGNMENT
   Invoice Number - 1323414          User -  TLF
* Mortgagor - LOANDEPOT COM LLC
* Mortgagee - MIDFIRST BANK
* Customer - SIMPLIFILE LC E-RECORDING
* **FEES**
   **RECORDING FEES**           $72.75
   **TOTAL PAID**               $72.75

| Bucks County UPI Certification On March 17, 2023 By LMC |
| --- |

| This is a certification page<br><br>**DO NOT DETACH**<br><br>This page is now part of this legal document. |
| --- |

**RETURN DOCUMENT TO:**
**NATIONWIDE TITLE CLEARING, LLC**
**2100 ALT 19**
**PALM HARBOR, FL 34683-2620**

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office

**Daniel J. McPhillips**
**Recorder of Deeds**

**\* - Information denoted by an asterisk may change during**
**the verification process and may not be reflected on this page.**

CERTIFIED PROPERTY IDENTIFICATION NUMBERS
██████  -  BENSALEM TWP
CERTIFIED 03/17/2023 BY LMC

**Prepared By:**
**Dave LaRose/NTC, 2100 Alt. 19**
**North, Palm Harbor, FL 34683**
**(800)346-9152**

When Recorded Return To:
MidFirst Bank
C/O Nationwide Title Clearing, LLC
2100 Alt. 19 North
Palm Harbor, FL 34683

# ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR LOANDEPOT.COM, LLC DBA MORTGAGE MASTER, ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: 11819 Miami St., Suite 100, Omaha, NE 68164; P.O. Box 2026, Flint, MI 48501-2026)** by these presents does convey, grant, assign, transfer and set over the described Mortgage therein together with all liens, and any rights due or to become due thereon to **MIDFIRST BANK, A FEDERALLY CHARTERED SAVINGS ASSOCIATION, WHOSE ADDRESS IS 999 NW GRAND BOULEVARD, SUITE 100, OKLAHOMA CITY, OK 73118 (800)654-4566, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage dated 05/21/2015, in the amount of $186,459.00 made by **LISA M TRANAUSKY AND JOSHUA TRANAUSKY** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR LOANDEPOT.COM, LLC DBA MORTGAGE MASTER, ITS SUCCESSORS AND ASSIGNS** recorded on 06/03/2015, in the Office of the Recorder of Deeds of **BUCKS** County, in the State of **Pennsylvania**, in **Instrument # 2015031677**.

Modification: 2/26/2021 INSTR # 2021018509 Modification: 5/12/2022 INSTR # 2022031472.

Property is more commonly known as: 3736 DEVONSHIRE PLACE, BENSALEM, PA 19020.

**Dated this 16th day of March in the year 2023**
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR LOANDEPOT.COM, LLC DBA MORTGAGE MASTER, ITS SUCCESSORS AND ASSIGNS**

By: _L A S T U_____
**LAUREN ASTLE**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.



STATE OF FLORIDA    COUNTY OF PINELLAS

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization on this 16th day of March in the year 2023, by Lauren Astle as VICE PRESIDENT of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (''MERS''), AS MORTGAGEE, AS NOMINEE FOR LOANDEPOT.COM, LLC DBA MORTGAGE MASTER, ITS SUCCESSORS AND ASSIGNS, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

*Julie Martens*

**JULIE MARTENS**

**COMM EXPIRES: 5/22/2026**

...IE MARTENS
lic - State of Florida
sion # HH 243030
Expires May 22, 2026
National Notary Assn.

Assignment of Mortgage from:
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (''MERS''), AS MORTGAGEE, AS NOMINEE FOR LOANDEPOT.COM, LLC DBA MORTGAGE MASTER, ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: 11819 Miami St., Suite 100, Omaha, NE 68164; P.O. Box 2026, Flint, MI 48501-2026)**
to:
**MIDFIRST BANK, A FEDERALLY CHARTERED SAVINGS ASSOCIATION, WHOSE ADDRESS IS 999 NW GRAND BOULEVARD, SUITE 100, OKLAHOMA CITY, OK 73118 (800)654-4566, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

Mortgagor: **LISA M TRANAUSKY AND JOSHUA TRANAUSKY**

All that certain lot or piece of ground situated in
Mortgage Premises: 3736 DEVONSHIRE PLACE
BENSALEM, PA 19020
BUCKS
(Borough or Township, if stated), Commonwealth of Pennsylvania.
Being more particularly described in said Mortgage.

### Certificate of Residence

I, **Lauren Astle**, do certify that the precise address of the within named Assignee is:
**MIDFIRST BANK, A FEDERALLY CHARTERED SAVINGS ASSOCIATION, WHOSE ADDRESS IS 999 NW GRAND BOULEVARD, SUITE 100, OKLAHOMA CITY, OK 73118 (800)654-4566, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

*LAstle*

**LAUREN ASTLE**

**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.